United States District Court
Southern District of Texas

**ENTERED**

September 29, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BRIAN CHRISTOPHER MUMPHORD, (TDCJ #02252485) | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-cv-1446 |
| BOBBY LUMPKIN, Director, Texas Department of Criminal Justice – Correctional Institutions Division, | § § § § | |
| Respondent. | § § | |

**MEMORANDUM OPINION AND ORDER**

Brian Christopher Mumphord, a Texas state inmate, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, to challenge his 2019 state-court conviction for continuous sexual abuse of a child. Dkt. 1. The respondent, Bobby Lumpkin, has answered with a motion for summary judgment, arguing that Mumphord is not entitled to the relief he seeks. Dkt. 12. Mumphord has replied. Dkt. 16.

Based on careful consideration of the pleadings, the record, and the applicable law, this Court concludes that Mumphord has not stated meritorious grounds for federal habeas relief, denies his § 2254 petition, and, by separate order, enters final judgment. The reasons are explained below.

**I.      Procedural Background and Claims**

Mumphord is presently in custody of the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ) as the result of a felony conviction in Harris County, Texas (Cause No. 1452174). Mumphord was charged by indictment with

continuous sexual abuse of a child. Dkt. 13-12, at 39. Following a trial, a jury found Mumphord guilty as charged and, on March 15, 2019, sentenced him to a 50-year prison term. *Id.* at 462-63.

The First Court of Appeals of Texas affirmed Mumphord's conviction and sentence. *Mumphord v. State*, No. 01-19-00231-CR, 2020 WL 3821085, at *1 (Tex. App.—Houston [1st Dist.] July 7, 2020, pet. ref'd). In October 2020, the Texas Court of Criminal Appeals refused Mumphord's petition for discretionary review. *Mumphord v. State*, No. PD-0676-20 (Tex. Crim. App. 2020).

Mumphord filed a state application for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure, collaterally challenging his conviction. *Ex parte Mumphord*, Application No. WR-93,589-01. In March 2022, the Court of Criminal Appeals denied the application without a written order. *Id.*

In his federal habeas petition, Mumphord raises the following grounds for relief:

1. the evidence was insufficient to support his conviction;

2. trial counsel rendered ineffective assistance by failing to file a motion to quash the indictment;

3. Section 21.02(d) of the Texas Penal Code is unconstitutionally vague and ambiguous; and

4. trial counsel rendered ineffective assistance by failing to request a lesser included offense instruction of aggravated sexual assault and sexual assault.

Dkt. 1, at 6-15. The respondent argues that the petition should be denied because Mumphord's claims are without merit.

## II.    Factual Background

The statement of facts is taken from the Texas Court of Appeals opinion affirming

Mumphord's conviction.

The complainant, A.R., was born in March 2000. After A.R.'s mother, "Jane," began dating him, Mumphord moved in with A.R. and Jane in late 2011. At the time, Jane was pregnant with the first of two sons she would have with Mumphord. One son was born in 2012, and the other was born in 2013.

In the summer of 2013, A.R. told Jane that Mumphord had sexually abused her by putting his mouth on her "private parts." Jane and A.R. confronted Mumphord about the sexual abuse, and he denied it. He told A.R. that if she continued to tell lies, she would break up the family, and Jane would be left to raise A.R. and her two younger brothers alone.

Jane did not call the police to report Mumphord's sexual abuse of A.R. Instead, she bought a lock and installed it on A.R.'s bedroom door. However, after two weeks, the lock broke. Mumphord continued to sexually abuse A.R., and A.R. said nothing about the abuse again until the summer of 2014.

In July 2014, Jane noticed that A.R. had red marks on her face. When she asked A.R. about the marks, A.R. told Jane that Mumphord had slapped her and had put his "private" in her. Jane took A.R. directly to Texas Children's Hospital where A.R. underwent a sexual-assault examination.

Several days later, A.R. was interviewed by S. Odhiambo, a forensic interviewer, at the Children's Assessment Center. A.R. told Odhiambo that Mumphord had sexually assaulted her multiple times. A.R. indicated that, over the course of the abuse, Mumphord had performed oral sex on her and had penetrated her vaginally and anally.

A.R. described specific instances of sexual abuse to Odhiambo. A.R. said that the first incident of abuse by Mumphord was mouth-to-vaginal contact, which occurred the summer before seventh grade. A.R. told Odhiambo that, during the second semester of her eighth-grade year, Mumphord had penetrated her vaginally with his penis. A.R. also described another incident during which Mumphord had choked her in the hallway of their home, taken her to her room, made her bend over the bed, and then had penetrated her vaginally and anally.

3

Mumphord was indicted for the offense of continuous sexual abuse of a child. The indictment alleged, in relevant part, as follows:

> Brian Christopher Mumphord . . . on or about March 14, 2012 and continuing through March 13, 2014, did then and there unlawfully, during a period of time of thirty or more days in duration, commit two or more acts of sexual abuse against a child younger than fourteen years of age including an act constituting the offense of aggravated sexual assault of a child, committed against A.R. on or about March 14, 2012, and an act constituting the offense of aggravated sexual assault of a child, committed against A.R. on or about March 13, 2014, and the defendant was at least seventeen years of age at the time of the commission of each of those acts.

The case went to trial in March 2019. Among the State's trial witnesses was Odhiambo, who was the outcry witness. She testified regarding the incidents of sexual abuse A.R. had described during the forensic interview. A video of the forensic interview was admitted into evidence.

The State also called Jane, who testified, among other things, that A.R. had first reported Mumphord's sexual abuse to Jane in the summer of 2013. Jane further testified that in the summer of 2014, A.R. again reported to Jane that Mumphord was sexually abusing her. At that point, Jane took A.R. to the hospital to report the abuse.

The State's last witness was A.R. She described Mumphord's sexual abuse of her over a two-year period when she was 12 to 14 years old.

The jury found Mumphord guilty of the offense of continuous sexual abuse of a child and assessed his punishment at 50 years in prison. This appeal followed.

*Mumphord*, 2020 WL 3821085, at *1-2 (internal footnote omitted).

## III.   The Applicable Legal Standards

Mumphord's petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state

court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state-court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.* at 102–03 (emphasis added; internal citations omitted).

AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31. This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

The respondent has moved for summary judgment. Summary judgment is proper when the record shows "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ordinary civil cases, a district court considering a motion for summary judgment must construe disputed facts in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, a court on summary judgment must view the evidence through "the prism of the

6

substantive evidentiary burden." *Anderson*, 477 U.S. at 254. Congress, through AEDPA, has constricted both the nature and availability of habeas review. This Court, therefore, applies general summary judgment standards only insofar as they do not conflict with the language and intent of AEDPA. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) ("[Rule 56] applies only to the extent that it does not conflict with the habeas rules."), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

Finally, Mumphord is a *pro se* petitioner. *Pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings lawyers file. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This Court broadly interprets Mumphord's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## IV.    Discussion

### A.    Insufficiency-of-the-Evidence Claim

In his first ground for relief, Mumphord contends the evidence was legally insufficient to support his conviction. Specifically, Mumphord alleges that the evidence was insufficient to establish that he committed two or more acts of sexual abuse during a period of 30 or more days in duration because the complaining witness's testimony was vague and she was unable to remember "key details" several times during her testimony. Dkt. 1, at 6-9.

On federal habeas review of a state-court conviction, a challenge to the legal sufficiency of the evidence is governed by *Jackson v. Virginia*, which reflects the federal

constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). This standard requires a reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted) (emphasis in original). The Supreme Court has emphasized "that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2062 (2012) (per curiam). A federal habeas court questions whether the state court's assessment of the *Jackson* standard was unreasonable. *See* 28 U.S.C. § 2254(d)(1). Together, *Jackson* and AEDPA create a "double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

The Texas First Court of Appeals considered Mumphord's challenge to the sufficiency of the evidence under the *Jackson* standard and concluded that the evidence was legally sufficient to support his conviction for continuous sexual abuse of a child. Because the Texas Court of Criminal Appeals denied relief without a written order, this Court considers the intermediate appellate court's decision as "the last reasoned opinion" on Mumphord's challenge to the sufficiency of the evidence. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–06 (1991) (federal courts "look through" an unexplained state-court denial to evaluate the last reasoned state-court decision). In considering Mumphord's claim, the state appellate court set forth the following analysis:

> To establish continuous sexual abuse of a child, the State must prove three elements:

8

(1) the defendant "commit[ted] two or more acts of sexual abuse";
(2) "during a period that is 30 or more days in duration"; and
(3) "at the time of the commission of each of the acts of sexual abuse, the [defendant was] 17 years of age or older and the victim [was] a child younger than 14 years of age."

TEX. PENAL CODE § 21.02(b); *see Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Acts of sexual abuse" are identified in the statute and include aggravated sexual assault. *See* TEX. PENAL CODE § 21.02. A person commits aggravated sexual assault if he intentionally or knowingly causes his sexual organ to contact or penetrate the sexual organ of a child younger than 14 years of age. *Id.* § 22.021(a)(1)(B)(i), (v), 22.021(a)(2)(B). A person also commits aggravated sexual assault if he intentionally or knowingly causes his mouth to contact the sexual organ of a child younger than 14 years of age. *Id.* § 22.021(a)(1)(B)(iii), 22.021(a)(2)(B). To prove the offense of continuous sexual abuse, the State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration" *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.— Houston [1st Dist.] 2017, pet. ref'd) (internal quotation marks omitted); *Lane v. State*, 357 S.W.3d 770, 773-74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (stating that factfinder is not required to agree on exact dates that acts of sexual abuse were committed).

## C.   A.R.'s Testimony Shows When Sexual Abuse Occurred

Mumphord challenges the sufficiency of the evidence to support his conviction for the offense of continuous sexual abuse of a child by asserting that the evidence was insufficient to establish that he committed two or more acts of sexual abuse against A.R. during a period of 30 or more days in duration. We disagree. At trial, A.R. provided testimony showing that Mumphord's sexual abuse of her occurred over a period that was 30 or more days in duration.

A.R. testified that she was born in March 2000 and that Mumphord began sexually abusing her in 2012 when she was 12 years old. She said that Mumphord sexually abused her 15 times over the course of the next two years until she was 14 years old. A.R. testified that Mumphord sexually assaulted her vaginally four times over several months during her seventh-grade school year. The evidence showed that A.R. was 12 to 13 years old in the seventh grade.

9

A.R. also provided detailed testimony about specific instances of sexual abuse. A.R. described the first sexual assault, which occurred mid-summer 2012 when she was 12 years old. She testified that Mumphord came into her bedroom, pulled down her pants, and put his tongue in her vagina. A.R. said that her body was "stiff," and she stared straight up at the ceiling. She stated that it made her feel "uncomfortable."

A.R. testified that "[t]he first time [Mumphord sexually abused her] was the first and only time [Mumphord's abuse] was oral sex. Any time after that was vaginal sex." A.R. then provided detailed accounts of two other separate sexual assaults that occurred more than 30 days after the first mid-2012 sexual assault.

A.R. testified that during one of these two incidents, she hit the wall while trying to push Mumphord away. She said her hitting the wall caused "a loud bang," which woke up her youngest brother. Mumphord became angry, and he told her that she should not have done that because it might wake up her mother. A.R. testified that she then agreed to have vaginal sex with Mumphord on her bed. She clarified that vaginal sex meant Mumphord put his penis in her vagina. A.R. testified that, during the assault, she turned her head away from Mumphord and did not try to fight back. She said that Mumphord's stomach rubbed against her, and he was "moving up and down." She described his breathing "like a heavy panting" that she could feel on her face. A.R. said that Mumphord "stopped when he was done." When asked how she had felt, she said that she felt "nothing." She testified, "At that time, I felt like I just stopped feeling because I didn't want to feel nothing." A.R. recalled that this incident occurred when her youngest brother—who was born in November 2013—was a couple of months old. She remembered that it was during the school year, and she was 13 years old. Thus, according to A.R.'s testimony, this incident of sexual assault occurred more than 30 days after the first mid-2012 sexual assault.

A.R. then described another incident that occurred when she was 13 years old. She said that it occurred during the first semester of eighth grade but after her youngest brother had been born in November 2013. A.R. testified that Mumphord called her into the hallway where he then groped her chest and vaginal area while she leaned against the hall closet. She stated that it made her feel "disgusting." Mumphord put his hands under her clothes, rubbed her vagina, and then inserted his finger into it. She remembered thinking that there was not much she could do to stop it because Mumphord was bigger than her and she was "weak."

The assault continued in the hallway for a few minutes and then Mumphord opened the door to A.R.'s bedroom. Mumphord told A.R. to lean over the bed, and she complied. A.R. recalled thinking, "after what will happen[,] I [will] get to shower whatever he left on me." A.R. stayed in that position for a few minutes and then Mumphord pulled her pants down. She testified that Mumphord "put his penis into my vagina and then performed vaginal sex." When asked how she had felt, she said that she had convinced herself "not to feel anything." A.R. testified that Mumphord "finished" and "collected himself and left the room." She said that she stayed in the same position for a few minutes and then took a shower.

Like the previously described sexual assault, this 2013 sexual assault occurred more than 30 days after the first mid-2012 sexual assault, and each of these three sexual assaults occurred before A.R.'s fourteenth birthday. Thus, A.R.'s testimony established the duration-of-the-abuse element of the offense.

On appeal, Mumphord asserts that A.R.'s testimony was not sufficient to support the jury's guilty finding. But it is well established that a child-sexual-assault complainant's uncorroborated testimony, standing alone, is sufficient to support a defendant's conviction. *See* TEX. CODE CRIM. PROC. art. 38.07; *see also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding victim's testimony of penetration by appellant, standing alone, was sufficient to support conviction); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (stating testimony of victim, standing alone, was sufficient evidence). The State has no burden to produce physical or other corroborating evidence. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.). And here, the State offered other testimony supporting A.R.'s testimony. Jane testified that A.R. told her in the summer of 2013 that Mumphord had sexually assaulted her. Odhiambo's testimony regarding what A.R. told her in the forensic interview about the sexual abuse, and the video of the forensic interview also lent support to A.R.'s testimony.

Mumphord references a specific point near the beginning of A.R.'s testimony where she answered that she "vaguely" remembered the timeline of the sexual assaults. However, after providing that answer, A.R. described specific examples of sexual assault in detail and testified when they occurred and how old she was at the time.

Mumphord also points to other instances in A.R.'s testimony where she indicated that she could not remember what was said at a specific time, certain details of what happened relating to events surrounding the sexual

assaults, or certain aspects of the sexual assaults. But A.R.'s inability to remember certain details did not definitively contradict the jury's verdict and instead bore on A.R.'s credibility. *See Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.).

It is the exclusive role of the fact finder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences[.]" *Buentello v. State*, 512 S.W.3d 508, 516 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Jackson*, 443 U.S. at 319). We "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Even contradictory evidence in the record will not diminish the sufficiency of evidence that otherwise supports the jury's verdict. *Buentello*, 512 S.W.3d at 516.

By returning a guilty verdict, we must infer that the jury believed A.R.'s testimony regarding Mumphord's sexual abuse, including when the abuse occurred and how old she was when it occurred. We defer to that determination. *See Jackson*, 443 U.S. at 318-19. Therefore, we disagree with Mumphord that A.R.'s testimony cannot support the duration-of-the-abuse element of the offense because she did not remember certain aspects of events. *Id.* at 319.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found, beyond a reasonable doubt, each element necessary to support the finding that Mumphord committed the offense of continuous sexual abuse of a child as charged in the indictment. *See id.* at 318-19; *see also* TEX. PENAL CODE § 21.02. Accordingly, we hold that the evidence was sufficient to support the judgment of conviction.

*Mumphord*, 2020 WL 3821085, at *2-5. A state appellate court's opinion following its review of the sufficiency of the evidence is entitled to "great weight." *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985) (citing *Jackson*, 443 U.S. at 310, n.15); *see also Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference"). To the extent that Mumphord asks this Court to reweigh the evidence and decide if the jury's decision was correct, that is "beyond the scope of review" the *Jackson* standard

permits. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). A federal habeas court may not substitute its view of the evidence for that of the factfinder. *See Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995) (citation omitted). Under the *Jackson* standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted). Viewing the evidence under the doubly deferential standard that applies on federal habeas review, the record fails to show that the state court's decision was objectively unreasonable or that Mumphord is entitled to relief under *Jackson*.

### B.   Ineffective-Assistance-of-Trial-Counsel Claims

In two grounds for relief, Mumphord alleges that trial counsel rendered ineffective assistance because he failed to file a motion to quash the indictment and failed to request an instruction on the lesser included offense of aggravated sexual assault or sexual assault. The respondent contends that Mumphord's claims are without merit because he fails to prove deficient performance or prejudice.

#### 1.   Standard of Review

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual

prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.* A petitioner must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.

14

Mumphord's ineffective-assistance claims were rejected by the state habeas corpus court. As a result, the issue is not whether this Court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citation omitted). Thus, this standard is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter,* 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).

### 2.    Failure to file a motion to quash the indictment

In his second ground for relief, Mumphord alleges that trial counsel rendered ineffective assistance by failing to file a motion to quash the indictment on the ground that it did not include "essential facts of aggravated sexual assault and/or sexual assault constituting the alleged offense." Dkt. 1, at 6, 9-11. Mumphord appears to contend that the indictment was defective because it failed to allege the specific manner and means by which Mumphord committed the underlying predicate offenses of aggravated sexual assault of a child. *Id.*

"[C]ounsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The "failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.

15

1994) (where petitioner complained of trial counsel's failure to object to the admission of extraneous offenses even though unadjudicated extraneous offenses generally are admissible at penalty phase of capital murder trial); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel cannot be deficient for failing to press a frivolous point).

"It is well settled that an indictment must allege all the essential elements of the offense charged." *Yuncevich v. State*, 626 S.W.2d 784, 785 (Tex. Crim. App. 1982) (citations omitted). Under Texas law, an indictment which tracks the statutory language is legally sufficient to provide notice to the defendant. *Bollman v. State*, 629 S.W.2d 54, 55 (Tex. Crim. App. 1982). Contrary to Mumphord's assertions, the record shows that the indictment identified all essential elements of the offense of continuous sexual abuse. Because the indictment tracked the language of section 21.02, under which Mumphord was charged, and alleged that Mumphord committed two predicate acts of sexual abuse— namely, aggravated sexual assault of a child— the indictment provided sufficient notice of the charged offense of continuous sexual abuse. Dkt. 13-12, at 394. The State's failure to allege the predicate acts with further specificity as to the manner and means in which they were committed does not render the indictment insufficient because the State is not constitutionally required to do so. *See Buxton v. State*, 526 S.W.3d 666, 682 (Tex. App.— Houston [1st Dist.] 2017, pet. ref'd) (holding that, "in charging an offense for continuous sexual abuse, the State need not allege the specific manner and means by which the defendant allegedly committed the predicate offenses to provide constitutionally sufficient

16

notice of the crime with which he is charged"). Because the indictment was legally sufficient, Mumphord fails to show that a motion to quash the indictment would have been successful.

Under these circumstances, Mumphord fails to demonstrate that trial counsel's failure to file a motion to quash was an exercise of unreasonable professional judgment or that, but for this failure, the result of the proceeding would probably have been different. Nor does Mumphord show that the state court's rejection of his ineffective-assistance-of-trial-counsel claim was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented.

### 3.    Failure to request a lesser included offense instruction

In his fourth ground for relief, Mumphord alleges that trial counsel rendered ineffective assistance by failing to request a lesser included offense instruction on aggravated sexual assault or sexual assault. Dkt. 1, at 12, 15. Mumphord contends that because the evidence at trial was insufficient to establish continuous sexual abuse of a child under the age of fourteen, "the jury would have found [Mumphord] guilty only of aggravated sexual assault, had the jury been presented with an opportunity to do so." *Id.* at 15.

Strategic choices made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). A federal habeas corpus court may not find ineffective assistance of counsel

merely because it disagrees with counsel's chosen trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Thus, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

To determine whether a jury instruction for a lesser offense should be given, Texas law requires that: (1) "the lesser included offense must be within the proof necessary to establish the offense charged;" and (2) "there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009). Mumphord has not identified any evidence that supports a finding that he was guilty only of the lesser included offense of aggravated sexual assault or sexual assault. And as discussed, *supra*, there was sufficient evidence to support a conviction for continuous sexual abuse of a child. *See Tolbert v. State*, 306 S.W.3d 776, 782 (Tex. Crim. App. 2010) (rejecting argument that a lesser included offense instruction is applicable to a case when an appellate court has decided there is sufficient evidence to support the conviction on the greater offense). Accordingly, a lesser included offense instruction was not warranted, and counsel cannot be considered ineffective for failing to request an unwarranted jury instruction.

Moreover, even if there was evidence to support a finding that Mumphord was guilty only of a lesser included offense, it would have been reasonable trial strategy for

counsel to pursue an outright acquittal rather than a guilty verdict on a lesser included offense. Counsel's decision to request a lesser included offense instruction is the type of strategic decision which is "virtually unchallengeable" in a federal habeas action, and the Fifth Circuit Court of Appeals has recognized that counsel's choice not to request an instruction is a matter of strategy and subject to reasonable debate. *See Druery v. Thaler*, 647 F.3d 535, 539-40 (5th Cir. 2011). Such a decision is properly classified as a matter of tactics and strategy because a lesser included offense instruction may increase the chance of a conviction on some charge, while foregoing it could lead to a complete acquittal. *Mejia v. Davis*, 906 F.3d 307, 316 (5th Cir. 2018). Here, the record contains sufficient evidence to demonstrate that counsel's strategic decisions fell within the wide range of trial tactics that constitute reasonable assistance. *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009).

In denying this claim on state habeas review, the Court of Criminal Appeals could have reasonably concluded that either a lesser included offense instruction was not warranted or that defense counsel had a strategic reason for not requesting a lesser included offense instruction. It is possible that defense counsel made the strategic decision not to request a lesser included offense instruction because he believed the jury would have to acquit Mumphord if they did not believe all of the complainant's allegations.

Mumphord fails to demonstrate that trial counsel's failure to request an instruction on a lesser included offense was an exercise of unreasonable professional judgment or that, but for this failure, the result of the proceeding would probably have been different. Nor does Mumphord show that the state court's rejection of his ineffective-assistance-of-trial-

counsel claim was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented.

### C.      Void-for-Vagueness Claim

In his remaining ground for relief, Mumphord alleges that section 21.02(d) of the Texas Penal Code[1] is unconstitutionally vague because it does not require jurors to unanimously agree on which two predicate acts of sexual abuse were committed. Dkt. 1, at 12-14. This claim is without merit.

A statute that is unconstitutionally vague violates the Due Process clause. *Kolender v. Lawson*, 461 U.S. 352, 353 (1983). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 357 (citations omitted). As a Texas court has explained, "[s]ection 21.02 clearly prohibits an individual from continuously sexually abusing a child under the age of 14 for a period of more than 30 days." *McMillan v. State*, 388 S.W.3d 866, 874 (Tex. App.—Houston [14th Dist.] 2012).

Mumphord argues that section 21.02(d) is unconstitutionally vague because it does not require jury unanimity on which specific acts of sexual abuse were committed by a defendant. The Sixth Amendment requires a unanimous jury verdict as to all the essential elements in criminal cases. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). Under the

---

[1] Section 21.02(d) provides: "If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." Tex. Pen. Code Ann. § 21.02(d).

plain language of section 21.02, it is the commission of two or more acts of sexual abuse over a period of more than thirty days that is the element that requires jury unanimity. *See Jacobsen v. State*, 325 S.W.3d 733, 737 (Tex. App.—Austin 2010, no pet.). "The individual acts of sexual abuse that make up this pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, the manner and means by which the actus reus element is committed." *Id.* Mumphord has not presented any clearly established Supreme Court precedent that holds to the contrary.

Mumphord has not shown that the state court's rejection of this claim was an unreasonable application of clearly existing federal law or an unreasonable determination of the facts in light of the record. Accordingly, he is not entitled to relief.

## V.   Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). Where denial of

relief is based on procedural grounds the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). Because Mumphord has not made the required showing, this Court will not issue a certificate of appealability.

## VI.   Conclusion and Order

Based on the foregoing, the Court **ORDERS** as follows:

1.    The respondent's motion for summary judgment (Dkt. 12) is **GRANTED**.

2.    The petition for writ of habeas corpus is **DENIED**, and this case is **DISMISSED** with prejudice.

3.    Any and all pending motions are **DENIED** as moot.

4.    A certificate of appealability is **DENIED**.

SIGNED at Houston, Texas, on _____ SEP 2 9 2023 _____.


ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE